UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRADLEY JAMES BEARD,

                    Petitioner,

v.

JAMES SCHIEBNER,

                    Respondent.

_____/

Case No. 1:23-cv-152

Honorable Phillip J. Green

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 5.)  Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ."  28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases.  The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding— the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not

parties to th[e] action at the time the magistrate entered judgment.").[1]  Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

<u>**Discussion**</u>

### I.     Factual allegations

Petitioner Bradley James Beard is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  On March 12, 2014, Petitioner pleaded guilty in the Barry County Circuit Court to one count of second-degree home invasion, in violation of MCL 750.110a(3), in exchange for the dismissal of seven other counts of second-degree home invasion.[2]

On April 16, 2014, Petitioner appeared for sentencing.  *Beard II*, (Pet., ECF No. 1, PageID.2.)  At the sentencing hearing, the prosecution first notified the circuit court that a victim-homeowner had only recently submitted a restitution request and that Petitioner, was seeking a hearing on that request.  *Beard I*, (Sentencing Tr., ECF No. 2-1, PageID.78).  The trial court unambiguously recognized Petitioner's right to a restitution hearing.  (*Id.*, PageID.89.)

---

[2] Petitioner's current petition provides very little detail regarding his crime and sentencing. However, Petitioner's first petition for writ of habeas corpus and supporting brief, filed with this Court on December 17, 2015, *Beard v. Palmer* (*Beard I*), No. 1:15-cv-1306 (W.D. Mich. Dec. 17, 2015), included allegations regarding, and references to, transcripts of Petitioner's plea hearing and the April 16, 2014, sentencing hearing. The Sixth Circuit has explained: "It is well established in our circuit that '[p]leadings in a prior case may be used as evidentiary admissions.'" *Cadle Co. II v. Gasbusters Prod. I Ltd. P'ship*, 441 F. App'x 310, 312 (6th Cir. 2011) (quoting *Barnes v. Owens–Corning Fiberglas Corp.,* 201 F.3d 815, 829 (6th Cir. 2000)). It is further a matter of settled Sixth Circuit precedent that courts may take judicial notice of proceedings in other courts. *Lyons v. Stovall*, 188 F.3d 327, 333 n. 3 (6th Cir. 1999). The relevant Barry County Circuit Court records appear in the *Beard I* docket as follows: the plea hearing transcript appears at ECF No. 2-1, PageID.66–75; and the sentencing hearing transcript appears at ECF No. 201, PageID.76–93. Matters docketed in the present case shall be referenced with the preface *Beard II*.

Restitution aside, the sentencing transcript indicates that the parties agreed to the scoring of the prior record variables and offense variables, leading to a level E IV, which resulted in a minimum sentencing range of 43 to 172 months. (*Id.*, PageID.78–79, 81–82.)  At the time of sentencing, Petitioner admitted that he had "probably" broken into "more than five hundred homes out there . . . throughout the counties," many uncharged, and that his offenses were committed during a time that he was "heavily medicated on methamphetamine [for] four years." (*Id.*, PageID.85–86.)

In departing from the sentencing guidelines, the circuit court explained:

Mr. Beard, you have 31 misdemeanors and 18 felonies. You were on bond at the time you did this. You've got one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve other convictions in different counties. You have a longstanding history with drugs, which I understand contributed to this offense and probably some other ones.

All I can say to you, Mr. Beard, is that at this point you're a menace to society. You go into people's homes, you invade their privacy. I had my home broken into a long time ago when I was living with my parents, and it was a really terrible feeling to know that somebody came into your house and went through all of your things and stole your things. It - - it's an invasion of someone's privacy, and it makes them scared that maybe that's gonna happen again.

And this has been an ongoing pattern for you. I agree with the prosecutor that some of the guideline scorings are extremely inadequate. You owe over a hundred thousand dollars between these cases. The likelihood of you paying that or paying all of it back is not very high. It would be difficult for you, and with your record it's gonna be difficult for you in terms of getting the type of job that would allow you to pay that back.

I find OV 9 to be inadequate in terms of points. This Court would probably assess double those points. OV 12 . . . at least a minimum of 25 points on that. It's currently scored at zero.

OV 12, which is contemporaneous felonious criminal acts, that is also scored at zero. I find this to be an inadequate scoring as well. I would score that at a minimum of 25 points and OV 13 at a minimum of 50 points. That is certainly inadequately scored as well.

I understand - - with respect to OV 13, it does say three or more crimes against a person. Pointed out by Mr. Elsworth and - - and borne out by all of the other charges, there are many more than three, and I find that to be an extremely inadequate score.

If I were to add these points onto the offense variable levels, it would come up to about 135, and that's way beyond what the guideline scoring was prior to the amendments being made.

When you're nearly double what the highest point level if, I don't find that to be an adequate reflection of what a sentence would be, given Mr. Beard's record and the . . . reasons I've just stated on the record.

(*Id.*, PageID.89–91.)   Petitioner was also sentenced as a fourth habitual offender under Mich. Comp. Laws § 769.12. *See Beard II*, (J. of Sentence, ECF No. 2-6, PageID.35.)  The circuit court therefore sentenced Petitioner to 240 to 480 months in the MDOC.  (*Id.*).  Following the imposition of Petitioner's sentence, the trial court also ordered that Petitioner pay restitution to his victims but explained that the order of restitution "will be subject to a restitution hearing and potential change."  *Beard I*, (Sentencing Tr., ECF No. 2-1, PageID.91.)

Dissatisfied with his sentence, Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals on October 9, 2014.  With his delayed application for leave to appeal, Petitioner acknowledged that "[t]here was no sentence agreement." *Beard I*, (Appl. for Leave to Appeal, ECF No. 2-1, PageID.51.)  He argued that the trial court erred in substantially departing upward from the minimum guideline range and that his sentence constituted cruel and unusual punishment. (*Id.*, PageID.56.)

6

By order entered November 21, 2014, the court of appeals denied Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented." *People v. Beard*, No. 324103 (Mich. Ct. App. Nov. 21, 2014).  Petitioner then sought leave to appeal to the Michigan Supreme Court on December 9, 2014.   Case Information Sheet, *People v. Beard*, No. 150613 (Mich. Dec. 9, 2014), https://www.courts.michigan.gov/c/courts/coa/case/324103 (last visited June 3, 2023).

During the pendency of Petitioner's direct appeal, the circuit court held the restitution hearing that had been requested by Petitioner at sentencing.  *Beard II*, (Pet., ECF No. 1, PageID.3; Brief, ECF No. 2, PageID.13.)  Petitioner alleges that "[t]he prosecutor was unable to carry his burden, so the Court declared the $15,344 would be removed." *Beard II*, (Pet'r's Br., ECF No. 2, PageID.13.)  An order amending restitution was entered on March 9, 2015.  *See Beard II*, (Am. J. of Sentence, ECF No. 2-5, PageID.32–33).

On May 28, 2015, the Michigan Supreme Court denied Petitioner's application for leave, explaining, "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Beard*, 863 N.W.2d 60 (Mich. 2015).

Petitioner filed his first petition for writ of habeas corpus in this Court on December 15, 2015.  In that petition, Petitioner raised three grounds for relief: "(1) the sentence unlawfully reflects an improper departure from the sentencing guidelines, was influenced by judicial bias, and deprived him of due process; (2) ineffective assistance of counsel; and (3) the sentence was disproportionate." *Beard I*, (Pet., ECF No. 1, PageID.6–9.)  On January 25, 2016, this Court found that

Petitioner had not properly exhausted his second habeas ground because Petitioner did not raise the argument on direct appeal and had not yet filed his one allotted motion for relief from judgment under Mich. Ct. R. 6.500. *Beard I*, (Op., ECF No. 3, PageID.96–98.) Accordingly, this Court dismissed Petitioner's first petition without prejudice.

Petitioner makes reference to additional proceedings before the trial court, Michigan Court of Appeals, and Michigan Supreme Court; however, Petitioner has not provided the Court with the details of those proceedings in his petition or brief. The Court is able to discern some information regarding Petitioner's subsequent activity from case records made publicly available by the Michigan appellate courts.[3] For example, on April 21, 2016, the Barry County Circuit Court denied Petitioner's motion for relief from judgment. *See* Case Information, *People v. Beard*, No. 332983 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/332983 (last

---

[3] The Michigan "clean slate" law has, for the time being, slowed public access to trial court records where the criminal defendant was sentenced more than seven years ago. On April 11, 2023, Michigan's "clean slate" law became fully effective. 2020 Mich. Pub. Acts 193. That law automatically sets aside certain felony and misdemeanor convictions after the passage of seven years. Because public disclosure of such expunged convictions would be inappropriate, the state courts are limiting access to the online criminal case search tool until they can ensure that expunged convictions are not disclosed. Because Petitioner's sentencing occurred more than seven years ago, presently, case information from the trial court is unavailable online. *See, e.g.*, MiCOURT Case Search, https://micourt.courts.michigan.gov/case-search/ (select continue, select 5th Circuit Court) (last visited June 7, 2023) ( "For criminal cases, the MiCOURT Case Search will currently only display case information for convictions if the sentencing occurred within the last seven years. Case information for convictions where the sentencing occurred more than seven years ago will soon be available through the MiCOURT Case Search, however, temporarily, you must contact the court of record to obtain those historic records.").

visited June 3, 2023).  By order entered August 29, 2016, the Michigan Court of Appeals denied Petitioner's application for leave to appeal.  *See id*.  By order entered October 3, 2017, the Michigan Supreme Court also denied leave to appeal.  *People v. Beard*, 901 N.W.2d 595 (Mich. 2017).  Presumably, that resolved the motion for relief from judgment that Petitioner filed to exhaust his state law claims before returning to this Court.

It is not entirely clear what happened after the Michigan Supreme Court denied leave to appeal during October of 2017.  Petitioner filed an application for leave to appeal another Barry County Circuit Court order that was entered April 6, 2018.  *See* Case Information, *People v. Beard*, No. 343499 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/343499 (last visited June 3, 2023).  The Michigan Court of Appeals denied leave on July 18, 2018.  *See id.*  The Michigan Supreme Court denied leave to appeal on December 21, 2018.  *People v. Beard*, 920 N.W.2d 932 (Mich. 2018).

Petitioner then apparently returned to the Barry County Circuit Court and filed another motion for relief from judgment.  That motion was denied on March 13, 2019.  *See* Case Information, *People v. Beard*, No. 349469 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/349469 (last visited June 3, 2023).  Petitioner sought leave to appeal.  The Michigan Court of Appeals denied leave, initially on October 31, 2019, and upon reconsideration on November 13, 2019.  *See id*.  Petitioner sought leave to appeal to the Michigan Supreme Court.  That court

denied leave by order entered March 27, 2020.  *People v. Beard*, 940 N.W.2d 98 (Mich. 2020).

Although the circuit court apparently denied Petitioner's successive motion for relief from judgment on March 13, 2019, shortly thereafter, the court entered an amended judgment that reflected the restitution change that had been ordered during March of 2015.  *Beard II*, (Am. J. of Sentence, ECF No. 2-5, PageID.32–33.) The amended judgment was entered prior to the date that Petitioner filed his application for leave to appeal described in the preceding paragraph.  It is not impossible that the amended judgment was at issue when the Michigan appellate courts denied leave to appeal.

Petitioner apparently filed another motion for relief from judgment in the Barry County Circuit Court.[4]  The motion was denied by order entered September 24, 2019.  *See* Case Information, *People v. Beard*, No. 352530 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/352530 (last visited June 3, 2023). Petitioner sought leave to appeal to the Michigan Court of Appeals.  That court denied

---

[4] Petitioner discloses that he filed a motion for resentencing after the trial court entered the amended judgment of sentence. *Beard II*, (Pet'r's Br., ECF No. 2, PageID.13.) He notes that the trial court denied the motion as a successive motion for relief from judgment. (*Id.*) He then suggests that he sought leave to appeal that determination to the Michigan Court of Appeals under Case No. 355073, and to the Michigan Supreme Court under Case No. 168832. *Beard II* (*id.*) Petitioner's claim that those case numbers correlate to his appeals of the denial of the post-amended-judgment motion for relief from judgment does not match the records from Michigan appellate courts. As set forth below, those case numbers relate to a complaint for superintending control.

leave by order entered April 7, 2020.  *See id.*  Petitioner did not seek leave to appeal that order to the Michigan Supreme Court.

Petitioner filed a mandamus complaint in the Michigan Court of Appeals on June 1, 2020.  *See* Case Information, *People v. Beard*, No. 353760 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/353760 (last visited June 3, 2023). Petitioner failed to pay the filing fee so his pleadings were returned to him and the file was closed out on July 24, 2020.  *See id.*

On October 5, 2020, Petitioner filed another complaint in the Michigan Court of Appeals, this time asking the court to exercise superintending control over his criminal proceedings in the Barry County Circuit Court.  *See* Case Information, *In re Beard*, No. 355073 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/355073 (last visited June 3, 2023). The court of appeals denied the complaint, initially on February 18, 2021, and upon reconsideration on March 16, 2021.  *See id.*  The Michigan Supreme Court also denied leave initially and upon reconsideration.  *In re Beard*, 978 N.W.2d 823 (Mich. 2022); *In re Beard*, 981 N.W.2d 493 (Mich. 2022).

Finally, on October 27, 2022, the Barry County Circuit Court denied Petitioner's most recent successive motion for relief from judgment.  *See* Case Information, *People v. Beard*, No. 364664 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/364664 (last visited June 3, 2023). By order entered April 14, 2023, the court of appeals denied leave to appeal.  *See id.* Petitioner's application for leave to appeal remains pending.  *See id.*

On February 8, 2023, Petitioner filed his habeas corpus petition raising one ground for relief, as follows:

> The scoring of (OV) 16 require[s] resentencing due to the trial court's order amending restitution[. The issue] is cognizable on habeas review.

*Beard II*, (Pet'r's Br., ECF No. 2, PageID.10).

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

13

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can

review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

Petitioner's sole ground for relief involves the state court's application of the sentencing guidelines and upward departure from the calculated guideline range. Petitioner, however, makes two intertwined arguments about the validity of his sentence: (1) Petitioner claims that the trial court relied upon false information in scoring offense variable 16, which considers the value of property stolen, because the amount of restitution was later reduced at hearing; and (2) Petitioner claims that the trial court "engaged in judicial fact-finding that increased the floor of the range of permissible sentence in violation of [*Alleyne v. United States*]" by relying upon a claimed amount of restitution that had not yet been established.  *Beard II*, (Pet'r's Br., ECF No. 2, PageID.14–15.)  The Court will address each facet of Petitioner's ground for habeas relief.

## A.    Sentence Based on Inaccurate Facts

As noted above, Petitioner first claims that his sentence was based on inaccurate information.  Petitioner's claim relates to the validity of his sentence.  However, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of, or departures from, sentencing guidelines are state law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (holding that the alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  Petitioner therefore is not entitled to relief based on state law governing the calculation of sentencing guidelines or departures from state sentencing guidelines alone.

Petitioner also fails to demonstrate a due process violation.  A sentence may violate the constitutional right to due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447.

Petitioner attempts to squeeze his challenge into the confines of due process by claiming that the trial court relied upon false information to score offense variable 16.  *See Beard II*, (Pet'r's Br., ECF No. 2, PageID.15.)  Petitioner argues that the trial court relied upon the last-minute claim of restitution to score offense variable 16 at 10 points, resulting in a sentencing guideline range of 43 to 172 months, but that the trial court later amended the judgment of restitution to remove that amount of restitution.  (*See id.*)  Petitioner further argues that, if offense variable 16 were to be scored at 5 points, in line with the amount of restitution awarded in connection with the March 9, 2015, order amending restitution, *see Beard II*, (Am. J of Sentence, ECF No. 2-5, PageID.33), Petitioner's minimum guideline range would be reduced to 36 to 142 months and would require resentencing.  *See Beard II*, (Pet'r's Br., ECF No. 2, PageID.16.)  Not only is Petitioner's argument flawed as a matter of law, but the assumptions underlying Petitioner's argument represent a gross distortion of the facts surrounding Petitioner's sentencing.  In examining the sentencing transcript, it

is apparent that the trial court did not rely on materially false information in imposing Petitioner's sentence.  *See Tucker*, 404 U.S. at 447.

First, Petitioner asserts that, "[a]t sentencing on April 16, 2014, the Prosecutor changed his guidelines that increased the Level (E-IV) which is 42–172 months as the minimum sentence." *Beard II*, (Pet'r's Br., ECF No. 2, PageID.13.)  There exists no basis for this claim.  While the prosecution noted that a homeowner had made a request for restitution "a couple of days" prior to the hearing, the sentencing transcript makes clear that the new request for restitution was not included in the scoring which ultimately led to a level of E-IV. *See Beard I*, (Sentencing Tr.,  ECF No. 2-1, PageID.78.)  At sentencing, both the prosecution and defense agreed to the pre-calculated scoring of the prior record variables with reductions in prior record variables 1 and 6, and an increase in prior record variable 7.  (*Id.*, PageID.78–79.)  The parties also agreed to the previously calculated offense variables, with a reduction in offense variable 9.  (*Id.*, PageID.79.)  Neither the prosecution nor the defense offered any other "additions, corrections, or deletions" to the agreed upon calculations.  (*Id.*)

Michigan law also did not require that the trial court include the newly claimed amount of restitution to reach a score of 10 on offense variable 16. Offense variable 16 relates to the value of property "obtained, damages, lost, or destroyed."  Mich. Comp. Laws § 777.46 (1999) (prior to 2019 amendment). It instructs, in relevant part:

> Score offense variable 16 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

*       *       *

18

(b) The property had a value of more than $20,000.00 or had significant historical, social, or sentimental value[:] 10 points

(c) The property had a value of $1,000.00 or more but not more than $20,000.00[:] 5 points

(d)The property had a value of $200.00 or more but not more than $1,000.00[:] 1 point

(e) No property was obtained, damaged, lost, or destroyed or the property had a value of less than $200.00[:] 0 points

(2) All of the following apply to scoring offense variable 16:

*        *        *

(c) The amount of money or property involved in admitted but uncharged offenses or in charges that have been dismissed under a plea agreement may be considered.

*Id*.

In arguing that the trial court relied upon false information, Petitioner asks this Court to accept that the trial court could rely only upon the amount of restitution eventually ordered which, without the increased amount requested only days before sentencing, would have amounted to $5,400.00. *See Beard II*, (ECF No. 2-5, PageID.32–33.) Petitioner's argument is legally incorrect, as a matter of state law, and he has entirely failed to identify a "false fact" upon which the trial court relied to determine his sentence.

First, with regard to state law, Petitioner argument ignores subsection I of offense variable 16, which explicitly permits a court to consider the amount of property involved in "admitted but uncharged offenses or in charges that have been dismissed under a plea agreement." *Id.* Petitioner admitted at sentencing that he had "probably" broken into "more than five hundred homes out there . . . throughout

the counties," many uncharged. *Beard I*, (Sentencing Tr., ECF No. 2-1, PageID.85–86.) And while Petitioner pleaded guilty to one count of second-degree home invasion, counts 2 through 8 were dismissed as part of the plea agreement.

The scope of property value considered under the sentencing guidelines is significantly greater than the scope of property value considered under the State of Michigan's restitution statutes. In *People v. McKinley*, 852 N.W.2d 770 (Mich. 2014), the Michigan Supreme Court interpreted the restitution statute to limit the scope of the loss that might be considered:

> MCL 780.766(2) provides in part that "the [sentencing] court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate." In [*People v.*]*Gahan*, [456 Mich. 264, 571 N.W.2d 503 (1997)], we discussed the Legislature's use of the term "course of conduct" and determined that term should be given a broad construction in light of its historical background and prior decisions from the Court of Appeals interpreting a similar statute. *Gahan*, 456 Mich. at 271–272, 571 N.W.2d 503. Notably, however, the *Gahan* Court devoted no attention to the modifying phrase "that gives rise to the conviction . . . ."
>
> We conclude that the *Gahan* Court's reading of MCL 780.766(2) is not sustainable and must be overruled. The plain language of the statute authorizes the assessment of full restitution only for "any victim of the defendant's course of conduct that gives rise to the conviction . . . ." The statute does not define "gives rise to," but a lay dictionary defines the term as "to produce or cause." Random House Webster's College Dictionary (2000), p. 1139. Only crimes for which a defendant is charged "cause" or "give rise to" the conviction. Thus, the statute ties "the defendant's course of conduct" to the convicted offenses and requires a causal link between them. It follows directly from this premise that any course of conduct that does not give rise to a conviction may not be relied on as a basis for assessing restitution against a defendant. Stated differently, while conduct for which a defendant is criminally charged and convicted is necessarily part of the "course of conduct that gives rise to the conviction," the opposite is also true; conduct for which a defendant is not criminally charged and convicted is necessarily not part

20

of a course of conduct that gives rise to the conviction. Similarly, the statute requires that "any victim" be a victim "of" the defendant's course of conduct giving rise to the conviction, indicating that a victim for whom restitution is assessed need also have a connection to the course of conduct that gives rise to the conviction. Allowing restitution to be assessed for uncharged conduct reads the phrase "that gives rise to the conviction" out of the statute by permitting restitution awards for "any victim of the defendant's course of conduct" without any qualification. The statute, however, provides an explicit qualification that the *Gahan* Court did not address.

Our conclusion is further reinforced when the language of MCL 780.766(2) is read *in pari materia* with other provisions in the Crime Victim's Rights Act, MCL 780.751 et seq. MCL 780.767, for example, sets forth the factors for consideration and the burden of proof in setting the amount of restitution. MCL 780.767(1) provides that "[i]n determining the amount of restitution to order under [MCL 780.766], the court shall consider the amount of the loss sustained by any victim as a result of the offense." (Emphasis added.) Similarly, MCL 780.767(4) provides that "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney." (Emphasis added.) "[T]he offense" in MCL 780.767 can only refer to the offense of which the defendant was convicted, because it is that "offense" that makes him subject to being ordered to pay restitution in the first place. Thus, these provisions further reinforce our conclusion that MCL 780.766(2) requires a direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded. *See, e.g.*, *Paroline v. United States*, 572 U.S. [434, 445] . . . (2014) ("The words 'as a result of' plainly suggest causation.").

*McKinley*, 852 N.W.2d at 774–76 (footnotes omitted).

Thus, the sentencing guidelines permit the inclusion of at least one category of property loss—loss from uncharged offenses—and possibly another—loss from charges that have been dismissed as part of a plea agreement—that the restitution statute does not. To suggest that the guideline scoring of Offense Variable 16 is "false" or must be rescored because of a change in the restitution amount is plainly wrong.

Second, Petitioner has not shown that the facts that the trial court relied on to conclude that Offense Variable 16 should be scored at 10 points were false.  It is the petitioner's burden to demonstrate that the sentencing court actually relied upon materially false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *see also Thomas v. Foltz,* 654 F.Supp. 105, 108 (E.D.Mich.1987).   But Petitioner's argument depends entirely on the trial court changing the amount of restitution.  The court did not change the restitution amount because the $15,344.00 loss was proven to be false, but because "[t]he Prosecution was unable to carry his burden . . . ." *Beard II*, (Pet'r's Br., ECF No. 2, PageID.13.)  Saying that the evidence was not sufficient to prove a fact is not the same thing as saying that the fact was false.

Moreover, Petitioner has failed to show that the trial court relied on the $15,344.00 to support the score of 10 points for Offense Variable 16.  The scoring of Offense Variable 16—scoring which Plaintiff did not challenge at the time—was apparently completed before the restitution claim for the $15, 344.00 was submitted. *See Beard II*, (Sentencing Information Rep., ECF No. 2-7, PageID.37); *Beard I*, (Sentencing Tr., ECF No. 2-1, PageID.80–81, 87–90).  The score of 10 points for Offense Variable 16 was recommended before the new restitution claim was included.  Therefore, even if the new claim were "false," Petitioner cannot show that the court relied upon that information in setting Petitioner's sentence.

Because Petitioner cannot show: (1) that the change in the restitution amount, as a matter of state law, had any bearing on the scoring of Offense Variable 16; (2) that the $15,344.00 restitution claim was "false;" or (3) that the change in the

restitution amount, as a matter of fact, was relied upon by the state court to score Offense Variable 16 or to justify the departure sentence, Petitioner fails to demonstrate a due process error in determining his sentence.

### B.   Judicial Fact-Finding to Enhance Sentence

Petitioner also contends that the trial court "engaged in judicial fact-finding that increased the floor of the range of permissible sentence in violation of [*Alleyne v. United States*]" by relying upon a claimed amount of restitution that had not yet been established.  *Beard II*, (Pet'r's Br., ECF No. 2, PageID.14–15.)  Petitioner's claim is based on a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.  In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [ ] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original).  The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only.  *Id.* at 520–21 (relying on *Booker,* 543 U.S. at 264–65 and holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness).  But, the court found that, because Lockridge received an upward departure sentence that did not rely on the minimum sentence range score, he could not "show prejudice from any error in scoring the [offense variables] OVs in violation of *Alleyne*." *Lockridge*, 870 N.W.2d at 522.

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018).  The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional.  *Robinson*, 901 F.3d at 714.  The

court reasoned that, "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111–12).

Here, we are not dealing with a judicial finding of fact that increased petitioner's mandatory minimum sentence under Michigan's sentencing guidelines. Petitioner's sentence was not the result of reliance upon a mandatory minimum, but an exercise of discretion to upwardly depart from Michigan's sentencing guidelines. In *Alleyne,* the Supreme Court emphasized:

> we take care to note what our holding does not entail. Our holding today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion by judicial factfinding does not violate the Sixth Amendment.

570 U.S. at 116.  Thus, *Alleyne* does not apply here. From the inception of this line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here, violates the Sixth Amendment.  *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.  We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi*, 530 U.S. at 481–82 (reiterating that "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review") (emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see also Reign v.*

*Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts."). Petitioner's *Alleyne* claim, therefore, lacks merit.

Petitioner has failed to demonstrate that the state courts' rejection of his claims is contrary to, or an unreasonable application of, clearly established federal law. Moreover, Petitioner has not shown that the state courts' adjudications depend upon an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to habeas relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by

26

demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: June 14, 2023                                    /s/ Phillip J. Green
                                                                      PHILLIP J. GREEN
                                                                      United States Magistrate Judge